lex loci domicilii. Thèse, par le Docteur en droit, Marion, p. 13 et seq. But independently of the principle just stated, a will of movables is generally, in the absence of other intention, to be governed by the laws of a testator's last domicile. Westlake, Private International Law (5th Ed.) 170; Bentwich, Domicile and Succession, 101; Dicey, Conflict of Laws (2d Ed.) 679; Parsons v. Lyman, 20 N. Y. 103; Despard v. Churchill, 53 N. Y. 192. Thus it is that where children are entitled to legitim by the law of testator's last domicile any provision in the will in derogation of legitim must give way to the law of testator's last domicile. Thornton v. Curling, 8 Sim. 310; Hog v. Lastaley, 6 Bro. P. C. 377; Kilpatrick v. Kilpatrick, 6 Bro. P. C. 58; Munro v. Douglas, 5 Mads. 394. To give effect to the principle indicated, administration in a foreign jurisdiction will sometimes be stayed in order to await and abide by the construction of the courts of the last domicile.

But we are not without domestic authority on these and similar points. That the decree in this case should provide that the surplus be remitted to the universal legatee to be disposed of by her in accordance with the will and the law of the testator's last domicile I have no doubt. Despard v. Churchill, 53 N. Y. 192; Hardenberg v. Manning, 4 Dem. Sur. 437. While it may be that there is a substitution under French law (corresponding to the trusts known to our law), of which substitution the usufructuary legatees are the beneficiaries, that is for the French law to determine. I am also of the opinion that the universal legatee should not be required to give security.

Settle decree accordingly.

<hr>

(91 Misc. Rep. 373)

## In re RALPH'S ESTATE.

### (Surrogate's Court, Oneida County. July, 1915.)

1. WILLS ⟨⟩181—CONSTRUCTION—BEQUEST OF PERSONALTY.
   A will bequeathing personalty is presumed to speak with reference to the time of testator's death.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1005–1007; Dec. Dig. ⟨⟩481.]

2. WILLS ⟨⟩634—GIFTS OF REMAINDER—CONSTRUCTION—"FROM AND AFTER."
   The words "from and after" in a testamentary gift of a remainder, following a life estate, are to be regarded, unless their meaning is enlarged by the context, as defining the time of enjoyment merely, and not the time of vesting of title.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. ⟨⟩634.
   For other definitions, see Words and Phrases, First and Second Series, From and After.]

3. TRUSTS ⟨⟩291—WILLS ⟨⟩682—TESTAMENTARY TRUST—ACCOUNTING BY TRUSTEE—CONSTRUCTION OF WILL.
   A provision of a will, not relating to or connected with the other provisions thereof, read: "I give * * * to my son G., * * * and my daughter L., * * * and the survivors of them, * * * $6,000 in trust, to invest the same, * * * and receive the interest, * * *

and pay the same over to J., widow of my deceased son, W., for and during her natural life, and in further trust upon the death of said J. to pay over the said sum of $6,000, and the interest due thereon, in equal shares to the children of my said son W." At testator's death five children of W. were living. *Held*, that one of such children, a married daughter, who died before her mother and without issue, took an undivided one-fifth share of the interest of the trust fund, subject to her mother's life interest, with accumulations, and that her husband, as administrator of her estate, was entitled to sue to compel an accounting by the trustee in charge of the funds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 409, 410; Dec. Dig. ☞291; Wills, Cent. Dig. §§ 1602, 1607–1611; Dec. Dig. ☞682.]

4. WILLS ☞523—"GIFT TO A CLASS."

A "gift to a class" is a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal, or in some definite, proportion; the share of each being dependent upon the amount of the ultimate number.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1115; Dec. Dig. ☞523.

For other definitions, see Words and Phrases, Second Series, Gift to a Class.]

5. LIMITATION OF ACTIONS ☞103—TRUSTEE—PROCEEDING TO COMPEL ACCOUNTING.

Where, in a proceeding under Code Civ. Proc. §§ 2719–2742, to compel an accounting by a substituted trustee, it appeared that such trustee had on many occasions, down to 1913, promised to render his account as trustee in the near future, and given on each occasion some trivial excuse for postponement, the statute of limitations was not available to the trustee to bar an accounting.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 500, 506–510; Dec. Dig. ☞103.]

In the matter of the estate of George Ralph, deceased. Proceeding against George J. Ralph, trustee, for an accounting. Accounting ordered.

R. B. Richards, of Binghamton (Geo. A. Kernan, of Utica, of counsel), for petitioner.

John G. Gibson, of Utica, for testamentary trustee.

SEXTON, S. George Ralph died in March, 1881, leaving a will which was duly admitted to probate in this court May 4, 1881. Among its provisions was the following:

"Seventh. I give and bequeath to my son George Ralph, Jr., and my daughter Lydia Fish, and the survivor of them, the sum of $6,000 in trust to invest the same in such securities as they may deem proper, and receive the interest thereon as it accrues, and pay the same as it is received by them over to Jane, widow of my deceased son, William Ralph for and during her natural life, and in further trust upon the death of said Jane Ralph to pay over the said sum of $6,000, and the interest due thereon, in equal shares to the children of my said son William."

The foregoing provision must be construed independent of all the other provisions of the will, as they are not in any manner related to or connected with said seventh provision. It appears: That at testator's death the following children of his son William Ralph were living: Edwin J. Ralph, William C. Ralph, George J. Ralph,

Mary E. Ralph, and Lydia J. Ralph. Thereafter Mary E. married Charles McKinney, petitioner herein, and Lydia J. became Lydia J. Cummings by marriage. The trustees named qualified, and died before said Jane Ralph. Thereafter, and on June 18, 1894, George J. Ralph was appointed successor trustee by a decree of this court, and duly entered upon the discharge of his duties as trustee, and is now trustee of said fund. That said Jane Ralph died April 12, 1905, thereby terminating said trust and releasing the fund to the beneficiaries, as provided by said seventh provision of the will in question. That at the time of the death of said Jane Ralph only two of the children of said William Ralph were living, viz., William C. Ralph, who has since died, and said George J. Ralph, the present trustee. That said Mary E. McKinney died March 23, 1893, without issue and leaving her husband, Charles McKinney, the petitioner, surviving her, who was thereafter duly appointed administrator of her estate, and is now acting as such. In the spring of 1888 said Mary E. McKinney and her said husband, Charles McKinney, adopted a little girl under the name of Merl McKinney, the legality of whose adoption is not questioned. Said George Ralph, as trustee, has never accounted, nor taken any proceedings to that end, nor paid over any portion of said trust fund to said Charles McKinney, individually or as administrator of the estate of his said deceased wife, Mary E. McKinney. That a petition was heretofore filed in this court, and a citation issued February 11, 1915, to said George J. Ralph, as trustee, to show cause why he should not account herein.

On the return day of the citation said trustee, by answer, denied that the petitioner, either individually or as administrator of his wife's estate, had any right or interest in said trust fund, or any right to demand an accounting of the trustee thereof, and also that more than six years had elapsed since petitioner's alleged rights accrued, and that his rights, if any he had at any time, were barred by the statute of limitations. The trustee contends that the clause, "upon the death of said Jane Ralph," fixes the time when the children of William Ralph were to take under said seventh clause, and that those then living would represent a class and take the whole gift.

[1] The first proposition is untenable, for the reason that in this state the doctrine is firmly established that in a will of personal estate the testator is presumed to speak with reference to the time of his death. Lynes v. Townsend, 33 N. Y. 558.

"Words of survivorship and gifts over on the death of the primary beneficiary are to be construed, unless a contrary intention appears, as relating to the death of the testator." Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008.

[2] The words "from and after," used in a testamentary gift of a remainder, following a life estate, unless their meaning is enlarged by the context, are to be regarded as defining the time of enjoyment simply, and not of the vesting of title. Hersee v. Simpson, 154 N. Y. 496, 48 N. E. 890, and cases cited. In Livingston v. Greene, 52 N. Y. 118, the testator, after having given a life estate to his wife in all of his real estate, then provided:

"From and after the decease and death of my beloved wife, * * * I give and bequeath all my real estate then being * * * to all my children, and to their heirs and assigns forever, to be equally divided, share and share alike, * * * after the death of my beloved wife, * * * I give to my son, John A. Livingston, one equal share"—and so on, naming all his eleven children.

All of the testator's children survived him, but several of them died before his widow. It was claimed that the children so dying before the widow took no estate; that, if they took a vested remainder at testator's death, still it was defeated by their failure to survive the widow. The court's answer was:

"It cannot be denied that the children of the testator, under this will, took a vested remainder in his real estate at his death."

[3] The will of the testator, Ralph, was dated August 12, 1880, and he died in the following March. The widow and five children of his deceased son William survived him; hence each of said children then took an undivided one-fifth part of said gift of $6,000, subject to the life use of their mother, Jane Ralph. Jane Ralph died April 12, 1905, and of her said five children only two survived her, one of whom has since died. The survivor is the trustee herein, who claims the entire gift of $6,000, with its accumulations, on the theory that said gift was to a class, and he, being the sole survivor, of course, represents the class and takes the whole gift. From a business standpoint this is a very attractive proposition, but from a legal point of view it is without support, unless I have utterly misconceived the law.

[4] A gift to a class is a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal, or in some other definite, proportions, the share of each being dependent for its amount upon the ultimate number.

At the time the testator made his will, being the time of the gift, the number to be benefited thereby was certain, as there were then living five children of his deceased son, William, and he knew it. When the testator said, "in equal shares to the children of my said son, William," he as distinctly designated the several beneficiaries as though he had described them by name. The number could not change, except by death among the beneficiaries. The number could not become uncertain by increase, as their father died before testator made his will.

In Matter of King, 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Ann. Cas. 412, now the leading case upon the subject of "gifts to a class," the will provided that the executors, as trustees, should sell certain real estate in New York, "and divide the entire proceeds of such sale equally between the nephews and nieces of my late husband, being the children of his brother, Rufus S. King, of New York, who were living at the death of my late husband, and the children also of his sister, Margaret M. Petty, of Orient, Long Island, share and share alike, to them and their heirs." It will be observed that the bequest was to the nephews and nieces of the deceased hus-

band of the testatrix who were living at the time of his death. The court said:

"That was as distinct a designation of the several beneficiaries as though they had been described nominatim. It was as though testatrix had named nine persons and had added, 'I give to these nine nephews and nieces of my late husband, who were living at the time of his death, the proceeds of my New York house, share and share alike.' There can be no doubt, we think, that this was a gift to designated persons in being at a specified time which antedated the death of the testatrix, and that there was a lapse of the shares of those who did not survive her."

The conclusion of the court was:

"That the surviving nephews and nieces take only their own shares, that there was a lapse of the shares of the five who predeceased the testatrix, and that these five shares passed into the residuary estate by virtue of the fifth clause of the will."

My conclusion, therefore, is that said Mary E. McKinney, whose interest only is involved herein, having survived the testator, took an undivided one-fifth part or share of said gift of $6,000, with its accumulations, if any, and her said share constitutes a part of her estate to be disposed of, as provided by law, and that her said husband, Charles McKinney, who is administrator of her estate, is entitled as such to maintain this proceeding, as provided by chapter 18, title 5, article 1 of the Code of Civil Procedure, unless the statute of limitations constitutes a bar.

[5] While the statute of limitations is intended as a quieting powder for stale claims, still its use as a bludgeon should not be countenanced. In Matter of Irvin, 68 App. Div. 158, 74 N. Y. Supp. 443, in a proceeding to compel an accounting the court said:

"A person obtaining possession of property as executor should not be permitted to acquire title thereto by failure of those interested to require him to account, unless there is no avenue of escape from such an inequitable result."

In Matter of Meyer, 98 App. Div. 7, 90 N. Y. Supp. 185, in a proceeding to compel an executor to account after 13 years had elapsed between the time letters testamentary were issued and the date of the application, the executor by answer set up the statute of limitations to defeat the proceeding. The court said:

"By virtue of the relation thus created the executor became trustee of those persons entitled to take pursuant to the provisions of the will. Occupying such relation, the statute of limitations would not begin to run until by some act sufficient for the purpose he repudiated his liability as trustee." Matter of Jones, 51 App. Div. 420, 64 N. Y. Supp. 667.

In Matter of Jones, supra, the court said:

"The rule is that as long as there is a subsisting and continuing trust, acknowledged or acted upon by the parties, the statute does not apply; but if the trustee denies the right of his cestui que trust, and the possession of the property becomes adverse, lapse of time from that period becomes a bar in equity." Reitz v. Reitz, 80 N. Y. 538; Mable v. Bailey, 95 N. Y. 206; Davis v. Davis, 86 Hun, 400, 33 N. Y. Supp. 477; Hamer v. Sidway, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463, 21 Am. St. Rep. 693; Zebley v. Farmers' Loan & Trust Co., 139 N. Y. 461, 34 N. E. 1067.

So far as the record discloses, there has been no repudiation of the trust relation, and if there had been it would have to be set up in the answer. Nothing contained in the answer discloses any more than mere lapse of time, and this in itself would not be sufficient, because in order to make the statute available there must have been such a lapse of time after the repudiation of the trust relation, for unless he has repudiated his trust relation he will remain liable, and this is nowhere asserted in the answer, nor does it otherwise appear. Matter of Meyer, supra.

In Matter of Camp, 126 N. Y. 377, 27 N. E. 799, the court laid down the rule that a general guardian occupies the position of a trustee so far as to prevent the running of the statute of limitations in his favor regarding the property intrusted to him, and that so long as the property remains in his possession as guardian and unaccounted for he must remain liable to account.

It seems that executors, administrators, general guardians, and trustees are all classed as trustees. They are handling other people's money in a fiduciary capacity, and, whenever the question of calling any one of them to an accounting by an interested person has been before the courts, they have rarely escaped by pleading the statute of limitations, or a repudiation of the trust. It seems strange that any honest man or woman, knowingly holding property belonging to another, or in which others are interested, should resort to any excuse, legal or otherwise, hoping to postpone the day of accounting, to the end that he or she may ultimately personally profit, possibly by death or lapse of time. The following question was certified to the Court of Appeals in Matter of Ashheim, 185 N. Y. 609, 78 N. E. 1099:

"First. Is an executor who has duly qualified and received assets of his testator's estate, for which he has never accounted, so far a trustee as to bring him within the rule that the statute of limitations does not commence to run in favor of a trustee, against one otherwise entitled to an account, until such trustee has repudiated his trust?"

And the Court of Appeals answered in the affirmative. The record shows that the said trustee from the time of the death of said Jane Ralph in 1905 down to 1913, on many occasions, in conversations with the petitioner, promised him that he would render his account as trustee in the near future, and giving on each occasion some trivial excuse for postponement. I therefore hold and decide that the statute of limitations is not available to the trustee in this proceeding, and that an order may be entered requiring him to account as trustee herein.

Decreed accordingly.