(170 App. Div. 452)

## MITCHELL v. MITCHELL.

(Supreme Court, Appellate Division, First Department. November, 1915.)

1. RELEASE ☞31—RELEASE CONTRACT—LIABILITY OF GUARDIAN.

Where a father, while holding as duly appointed guardian of his two sons money derived from bequests to the sons, entered into a contract with them which, after reciting the purpose of the contract to be the settlement of a dispute as to the respective interests of the parties in the business conducted by them, proceeded to set out the terms of a settlement in detail, and thereafter recited that the father was released generally from claims of every nature "since the beginning of the world to the date of these presents," but there was no reference in the instrument to the bequests or the father's liability as guardian therefor, the father was not released from his liability under such bequests as guardian, since the language releasing him generally must be deemed to be limited to the particular claims recited.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 74–77; Dec. Dig. ☞31.]

2. LIMITATION OF ACTIONS ☞102, 103—RELEASE CONTRACT—STATUTE OF LIMITATIONS.

Where a father, holding money as guardian for his sons, entered into a contract with them for the settlement of a business dispute whereby he was released from all claims generally, but such language was limited by implication to claims arising out of the business only, his trust as guardian was not thereby terminated, accounted for, or repudiated by him, so as to start the running of the statute of limitations against his liability as guardian.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494–510; Dec. Dig. ☞102, 103.]

Appeal from Special Term, New York County.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

Harold Nathan, of New York City, for appellant.

Frederick L. Guggenheimer, of New York City (Otto Horwitz, of New York City, on the brief), for respondent.

LAUGHLIN, J. On or about the 7th day of April, 1898, when the plaintiff was a minor of the age of about 15 years, letters of guardianship were duly issued by the probate court of the county of Suffolk, Mass., appointing the defendant, who is his father, his guardian, with authority to receive and take possession of all his property, and on the next day the defendant as such guardian received from the executors of the will of one Foss the sum of $500 bequeathed to the plaintiff.

The plaintiff alleges that the defendant brought the money so received by him as guardian for the plaintiff into the state of New York, where both parties now reside, and has never accounted therefor, although an accounting was duly demanded by plaintiff after he attained his majority and prior to the commencement of the action, which was brought for an accounting on the 7th day of August, 1914. The defendant admitted his appointment as guardian, as alleged, and the receipt of the money, and that he had not accounted, and pleaded the six-year statute of limitations and a release of the cause of action. The defendant was likewise at the time appointed guardian of his son Bertram, who was about 5 years younger than the plaintiff, and he received a like amount for Bertram, for an accounting for which another action has been brought, and the appeal has been argued and is to be decided herewith.

[1] The two sons resided with their father until the death of their mother in November, 1913. The defendant testified that his son Bertram was employed by him on a salary in the woolen rag business, and that after the death of his wife a controversy arose, which resulted in litigation between him and his son, but he did not specify which son, and that the litigation was settled by the execution of a release under seal on the 6th day of January, 1914, and the learned trial court found that it released the defendant from accounting as guardian. The release is in the form of an agreement between Leon Mitchell, as party of the first part, Bertram Mitchell, as party of the second part, and Michael Mitchell, as party of the third part. It contains preambles reciting that a business was being conducted at the city of New York under the name "M. Mitchell," which the party of the third part claimed to belong to him exclusively, and the party of the first part claimed an interest therein; that a dispute had arisen between the parties of the first and third parts as to the ownership of the business, and that the parties had agreed to settle and adjust their said disputes. It was provided that the agreement witnesseth that the party of the third part agreed to pay the party of the first part $8,800 in the manner and at the times therein stated, and that the party of the first part in consideration thereof agreed to receive said payment in full settlement, satisfaction, and accord. The next paragraph of the agreement provided as follows:

"In consideration of the foregoing, the said party of the first part hereby agrees to receive the foregoing in full settlement, satisfaction, and accord of any and all claims and demands of every nature and description whatsoever, which the party of the first part now has or heretofore has had against the party of the third part, as well as any and all claims whatsoever to the said business conducted in the name of 'M. Mitchell,' and in consideration of the foregoing the said party of the first part hereby sells, assigns, transfers, and sets over unto the party of the third part all his right, title, and interest in and to any and all of the merchandise, outstandings, cash in bank, and otherwise, as well as in and to all other assets of every kind, nature, and description to said business in any wise belonging or appertaining."

It was then provided in the agreement that the party of the first part should deliver to the party of the third part certain specified books and papers, and all other books and papers and property belonging or relating to said business and containing a covenant on the party of the first part with respect to the amount of money he had withdrawn, collected, or received in the business, and with respect to the debts contracted therefor by him. Then followed the final paragraphs of the release preceding the witness clause, as follows:

"And the said parties of the first and second part, in consideration of the foregoing, and the sum of one dollar to them in hand paid by the party of the third part, receipt whereof is hereby acknowledged, do each hereby discharge and release the said party of the third part of, from, and against any and all claims and demands of every nature and description, whether due or to grow due, which against the said party of the third part the parties of the first and second part may now have, since the beginning of the world to the date of these presents, other than those which may arise from or under the terms of this agreement.

"And in consideration of the foregoing, the said party of the third part hereby agrees to assume and discharge all the debts and liabilities incurred in connection with the said business of M. Mitchell, and to hold the said party of the first part free and harmless therefrom; and in consideration of the foregoing the said party of the third part does hereby discharge and release the parties of the first and second part, and each of them, of, from, and against any and all claims and demands of every nature and description, whether due or to grow due, which against the said parties of the first and second part, or either of them, the party of the third part may now have, since the beginning of the world to the date of these presents, other than those which may arise from or under the terms of this agreement."

The learned trial court construed this agreement as in effect constituting two releases, one a particular release with respect to the business, executed between the plaintiff and his father, and the other a general release by the two sons to their father, and therefore held that the general provisions are not limited by the particular provision relating to the settlement of the controversy with respect to the business. I am unable to agree with this construction of the instrument. All of the provisions of the agreement are, I think, consistent with the testimony of the defendant, which shows that he denied that the plaintiff was interested in the business, but conceded that Bertram was associated with him therein. The first part of the agreement relates to the settlement of the controversy between the plaintiff and his father, from which it would appear that the father, while claiming that the plaintiff had no interest, made very substantial concessions represented by his agreement to pay $8,800 on account thereof. The latter part of the agreement, which constitutes an agreement between the two

sons and their father, plainly shows that it also relates to the business, to which the plaintiff had asserted a claim, denied by his father, and in which the father conceded that the other son was associated with him. The consideration for the release of their father by the two sons in this part of the agreement is recited to be the consideration thereinbefore stated, which was the settlement of the controversy between the plaintiff and his father, and in addition thereto the nominal consideration of $1, and while the provisions of the second last paragraph, in which the sons released their father, are general, yet they are qualified by the last paragraph which clearly shows that they were intended to relate to the business, for it is therein provided that the father agrees, in consideration of the release by his two sons, to assume and discharge all debts and liabilities incurred in connection with the business, and to hold them harmless therefrom, and contains in general language a release by the father to the sons.

The general rule is that where a release contains a recital of a particular claim, obligation, or controversy, and there is nothing on the face of the instrument, other than general words of release, to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed to be limited thereby. Jackson v. Stackhouse, 1 Cow. 122, 13 Am. Dec. 514; Hoes v. Van Hoesen, 1 Barb. Ch. 379; McIntyre v. Williams, 1 Edw. Ch. 34; Slayton v. Hemken, 91 Hun, 582, 36 N. Y. Supp. 249, Romaine v. Sweet, 57 App. Div. 613, 68 N. Y. Supp. 516; Murphy v. City of New York, 190 N. Y. 413, 416, 83 N. E. 39; Eisert v. Bowen, 117 App. Div. 488, 102 N. Y. Supp. 707, affirmed 191 N. Y. 544, 85 N. E. 1109; Kirchner v. N. H. S. M. Co., 135 N. Y. 182, 31 N. E. 1104; Texas & Pacific Ry. Co. v. Dashiell, 198 U. S. 521, 25 Sup. Ct. 737, 49 L. Ed. 1150; Todd v. Mitchell, 168 Ill. 199, 48 N. E. 35; Bassett v. Lawrence, 193 Ill. 494, 61 N. E. 1098; Van Slyke v. Van Slyke, 80 N. J. Law, 382, 78 Atl. 179, 31 L. R. A. (N. S.) 778, Ann. Cas. 1912A, 498. At one time it was considered most important in deciding such questions whether a particular recital preceded or followed the general words of release, but later decisions show that this is not controlling. Romaine v. Sweet, supra; Murphy v. City of New York, supra. There is no reference in this agreement to any claim on the part of the sons against the father as their guardian, and it would, we think, be unreasonable to consider the agreement as releasing the liability of the defendant as guardian, even if a general release by the sons to their father would release him as guardian, which is, to say the least, extremely doubtful. See Markley v. Camden Safe Deposit & Trust Co., 74 N. J. Eq. 279, 69 Atl. 1100; Matter of Camp, 126 N. Y. 377, at 389, 27 N. E. 399.

[2] There is no force in the contention that the statute of limitations has run against the action. The father as guardian was trustee of an express trust, and until he accounts or repudiates the trust the statute of limitations does not run against the right of the beneficiaries to call him to account. Matter of Asheim, 111 App. Div. 176, 97 N. Y. Supp. 607, affirmed 185 N. Y. 609, 78 N. E. 1099; Matter of Irvin, 68 App. Div. 158, 74 N. Y. Supp. 443; Matter of Anderson, 122 App.

Div. 453, 106 N. Y. Supp. 818; Matter of Camp, supra; Matter of Sack, 70 App. Div. 401, 75 N. Y. Supp. 120; Matter of Taylor, 30 App. Div. 213, 51 N. Y. Supp. 609. So far as appears, he neither accounted nor repudiated the trust. The record discloses no act which would set the statute running in his favor. It must therefore be deemed that he still holds the property for the plaintiff. There is no evidence with respect to when plaintiff first knew or discovered that defendant had received this money as such guardian or had not accounted therefor.

Libby v. Van Derzee, 80 App. Div. 494, 81 N. Y. Supp. 139, affirmed without opinion 176 N. Y. 591, 68 N. E. 1119, and Constantine v. Constantine, 91 App. Div. 607, 87 N. Y. Supp. 139 relied upon by counsel for the respondent, although not in harmony with the views here expressed, are distinguishable on the ground that those actions were not brought for an accounting, and the decision in one of them was placed on the ground that they were actions at law. Matter of Van Dersee, 73 Hun, 532, 26 N. Y. Supp. 121, also relied upon by the respondent, is, I think, in direct conflict with Matter of Camp, and is inconsistent with the later decision in Matter of Sack, supra, and is also in conflict with the principle upon which the decisions in Matter of Asheim and Matter of Irvin, supra, are based.

It follows, therefore, that the judgment should be reversed, and there should be an interlocutory judgment for an accounting, with costs to the appellant to abide the event. All concur.

---

(170 App. Div. 458)

### MITCHELL v. MITCHELL.

(Supreme Court, Appellate Division, First Department. December 10, 1915.)

Appeal from Special Term, New York County.

Action by Bertram Mitchell against Michael Mitchell, individually and as guardian of Bertram Mitchell. Judgment dismissing complaint, and plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

Harold Nathan, of New York City, for appellant.

Frederick L. Guggenheimer, of New York City (Otto Horwitz, of New York City, on the brief), for respondent.

